**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

HAKIM CRISP,

    Plaintiff,                                      CASE NO. 03-CV-10136-BC

v.                                            DISTRICT JUDGE DAVID M. LAWSON
                                               MAGISTRATE JUDGE CHARLES BINDER

SERGEANT SNYDER and
SERGEANT ROSE,

    Defendants.

_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
**ON DEFENDANTS SNYDER AND ROSE'S**
**RULE 16(b) MOTION TO DISMISS OR ALTERNATIVE**
**RULE 56(b) MOTION FOR SUMMARY JUDGMENT**
(Dkt. 34)

**I.      RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Rule 56(b) Motion for Summary Judgment be **GRANTED**.

**II.     REPORT**

      **A.     Introduction**

By order of U.S. District Judge David M. Lawson, this case was referred to the undersigned Magistrate Judge for general case management on September 5, 2003. (Dkt 2.) Pending is the above-entitled motion filed by the two remaining defendants in this case. In a Report and Recommendation issued September 19, 2003, I suggested the dismissal of 12 other defendants. (Dkt. 7.) The recommendation was adopted on September 24, 2004. (Dkt. 15.) Plaintiff filed a

response opposing the motion. (Dkt. 36.) After a motion filed by Plaintiff for additional discovery was granted in part (Dkt. 37), the parties were allowed additional time to supplement their documents. (Dkt. 38.) Defendants filed additional discovery (Dkts. 39 & 40), and Plaintiff filed a supplemental response. (Dkt. 41.) After review of the documents, I conclude that pursuant to E.D. Mich. LR 7.1(e)(2), this motion is ready for Report and Recommendation without oral argument.

**B.     Background**

Plaintiff is a state prisoner presently incarcerated at the Bellamy Creek Correctional Facility in Ionia, Michigan. The incidents giving rise to Plaintiff's complaint took place during the evening of October 16, 2002, at which time Plaintiff was incarcerated at the St. Louis Correctional Facility in St. Louis, Michigan. Plaintiff's *pro se* civil rights complaint is brought under 42 U.S.C. § 1983 and claims that the defendants negligently or intentionally exposed him to hazardous and toxic materials when they forced Plaintiff to clean his cell following an electrical fire and then locked him in the contaminated cell overnight. Plaintiff alleges that the fire was caused by a faulty electrical adaptor he purchased at the prison store.

Plaintiff alleges that Defendants Snyder and Rose did an investigation and found the cause of the fire which was extinguished by Defendant Snyder. Plaintiff claims that Defendants Snyder and Rose ordered him to remove a damaged blanket and sheets from the cell, which were "still engulfed with smoke and fumes as the [defendants] stood in the hallway and watched." (Compl., Dkt. 6 ¶ 31. ) Plaintiff alleges that although he was coughing, Sergeant Rose gave him no assistance. According to the complaint, Defendants ordered Plaintiff and his cell mate to place the damaged bedding in a trash can, and after retrieving a replacement mattress and clean linens, they were locked in their cell. (*Id*. ¶¶ 35, 38.) Subsequently, a porter brought them bottles of

disinfectant cleaner. Plaintiff claims that the cell continued to smell of smoke and fumes and caused him difficulty breathing. (*Id.* ¶ 51.) Plaintiff claims that he had trouble sleeping, felt ill, and was coughing. (*Id.* ¶ 55.) He claims that although he requested assistance, none was forthcoming. Plaintiff's complaint alleges that he suffered dizziness, lightheadedness, and blurred vision, and that on the way to breakfast the next morning, he fainted and was taken by ambulance to a local hospital, complaining of headache and pain in his throat and upper chest. (*Id.* ¶¶ 60-63.) Plaintiff claims that blood tests taken at the hospital revealed the presence of chemical toxins. According to the complaint, as a result of this incident, Plaintiff has "difficulty breathing, respiratory infection/disorders, fainting spells, infections in my throat and esophagus, coughing attacks, pain in my upper chest, wheezing, breathlessness, and a deep cough that brings up yellow fluid." (*Id.* ¶ 70.) Plaintiff seeks a declaratory judgment stating that the defendants violated his Eighth Amendment constitutional right to be free from cruel and unusual punishment, as well as compensatory and punitive damages.

  **C. Defendants' Motion**

  **1. Arguments of the Parties**

  Defendants Snyder and Rose argue that their actions do not constitute cruel and unusual punishment as this term has come to be defined by the federal courts, and in particular, the United States Supreme Court. These Defendants point out that Plaintiff was not in the cell when the fire was found and extinguished. Defense counsel points out that Plaintiff has failed to allege that the conduct of these Defendants was in any way willful or wanton, or that they intentionally sought to cause Plaintiff any harm. Defendants also argue that they are entitled to a finding of qualified immunity in their favor.

In his response, Plaintiff does not contest Defendants' statements that Plaintiff was not in the cell at the time the fire occurred or that he received a new mattress and clean linens thereafter. Plaintiff does contest the other assertions made by Defendants, attaching to his response affidavits of other prisoners, as well as excerpts of his medical records. Plaintiff asserts that even though the cell in which he was lodged was designed for a single prisoner, two prisoners were assigned to the cell on the date of the fire. Plaintiff argues that the remarks made by Defendants during and after the incident, including a statement by Defendant Rose, "Don't be such a baby," are indicative of their wanton disregard for his safety. Plaintiff argues that the conditions of the cell were "objectively cruel" and posed an "obvious and excessive risk to my safety and future health[.]" (Pl.'s Resp., Dkt. 36 ¶ 27.) Plaintiff argues that neither Defendant is entitled to qualified immunity, citing *Boretti v. Wiscomb*, 930 F.2d 1150 (6th Cir. 1991) in support of his argument that both Defendants were "exceeding their discretion" on the night of the incident. (Pl.'s Supp. Resp., Dkt. 41 ¶ 30.a.)

**2.     Governing Law and Motion Standards**.

Section 1983 creates a federal cause of action against state and local officials who, while acting under the color of state law, deprive an individual of a right secured to him by the Constitution or federal law. 42 U.S.C. § 1983.[1]  A claim under § 1983 consists of two essential

---

[1]The statute provides in pertinent part that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.

elements: (1) the defendant was a person acting under the color of state law; and (2) the defendant deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States of America. *Street v. Corrections Corp. of America*, 102 F.3d 810, 814 (6th Cir. 1996).

Defendants' motion is filed alternatively under Rules 12 and 56. Rule 12(b) of the Federal Rules of Civil Procedure provides that when "matters outside the pleading are presented to *and not excluded by the court*, the motion [to dismiss] shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." FED. R. CIV. P. 12(b) (emphasis added). In their treatise, Wright and Miller explain that, pursuant to the portion of the rule italicized above,

> [t]he court has complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion. This discretion generally will be exercised on the basis of a determination of whether or not the proffered material, and the resulting conversion from the Rule 12(b)(6) to the Rule 56 procedure, is likely to facilitate the disposition of the action.

5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1366 (footnote omitted).

Both parties have filed exhibits, which I conclude are worthy of review and consideration. It is clear that both parties rely upon these documents, thus presuming that the Court will accept and review them. After reviewing the exhibits, I cannot discern that any party will be prejudiced. I therefore conclude that matters outside the pleadings should be accepted and the motion considered under Rule 56, as the acceptance and review of these documents will materially facilitate the disposition of the instant motion.

A motion for summary judgment will be granted under Rule 56(c) where "there is no genuine issue as to any material fact . . . the moving party is entitled to a judgment as a matter

of law." FED. R. CIV. P. 56(c). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 326.

In response, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos*., 8 F.3d 335, 339-40 (6th Cir. 1993). When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court will rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). The Sixth Circuit explicitly instructs that it is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Id.* at 406.

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

    **3.**    **Relevant Record Evidence**

All parties agree that the cause of the fire in Plaintiff's cell is not at issue. The parties, however, dispute Defendants' response to the incident and their subsequent handling of the Plaintiff.

    **a.**    **Affidavits Attached to Plaintiff's Response**

Attached to Plaintiff's response is the affidavit of Prisoner Delano Cotton, Plaintiff's cell mate. Cotton states that Defendants Snyder and Rose required him to "clean and reside in the contaminated cell" after the fire. (Cotton Aff., Dkt. 36 ¶ 4.) Cotton states that he was "not provided with the proper safety equipment to do so." (*Id.* ¶ 7.) He disputes that the cell was allowed to air out after the fire was extinguished.

Prisoner Richie Harris states that during the dinner hour, there was a fire in a nearby cell and that an announcement was made for all inmates to return to their rooms and "lock down." (Harris Aff., Dkt. 36 at ¶ 4.) Prisoner Harris states that as he passed Plaintiff Crisp's cell, he observed smoke and fumes in the area and could not see inside the room. Ten to fifteen minutes after being locked in his room, he observed Defendants Snyder and Rose standing in the hallway and heard Defendants direct Plaintiff and prisoner Cotton to enter the cell and remove the damaged mattress and linens. (*Id.* ¶ 8.) Harris recites that he saw Cotton and Crisp carry the mattress and

7

linen, still smoking, from the cell, and that upon returning to the cell, the two were locked in the room. (*Id*. ¶ 10.)

### b.   Affidavits Attached to Defendants' Motion

Defendant Mark Snyder avers that on October 16, 2002, he put out a fire in the cell occupied by Plaintiff. According to the affidavit, "the fire was in the incipient stage, very small and just beginning to burn. I used the ABC fire extinguisher to put out the fire. The fire required two small bursts from the extinguisher to put it out." (Snyder Aff., Dkt. 34, Ex. A at ¶ 4.) Snyder avers that the fire occurred during evening meal time and that the inmates were not present in the cell. Snyder states that after the fire was extinguished, the door was left open for approximately one-half hour before inmates returned. According to Defendant Snyder, Crisp and Cotton volunteered to clean the cell, and they were given sponges, a bucket and a cleaning agent believed to be a multi-purpose cleaner for that purpose. Before Plaintiff and his cell mate were returned to the cell, Snyder avers that "Sergeant Rose and I both made inspection of the cell[.]" (*Id*. ¶ 10.) Snyder avers that, to his knowledge, Plaintiff did not request any health care for the first 24 hours after the fire and that, to his knowledge, Crisp had not been diagnosed as having smoke inhalation or exposure to hazardous fumes. (*Id*. ¶¶ 14 &15.)

Attached to Defendant Snyder's affidavit are grievance materials arising out of this incident which indicate findings at the Step II and III levels of the Michigan Department of Corrections' (MDOC) grievance process that Plaintiff and his cell mate were not in the cell at the time of the fire, that the cell was aired out before the inmates were required to return, that Plaintiff and his cell mate volunteered to clean the cell, that Plaintiff was issued a fresh mattress and bedding, and that when notified the next day that Plaintiff had passed out while waiting in the dining line, medical staff arranged for Plaintiff to be taken to a hospital for evaluation. The grievance materials further

indicate that Plaintiff did not seek medical care for any alleged smoke inhalation until 24 hours after the incident and that health care staff could not corroborate a diagnosis of ailments caused by smoke inhalation or exposure to hazardous fumes.

Also attached to Defendants' motion is the affidavit of Defendant Rose. (Rose Aff., Dkt. 34, Ex. B.) Defendant Rose avers that on the evening of October 16, 2002, he "checked out" the Plaintiff's cell, noticing that a sheet and mattresses had burn marks on them and that there was a partially melted electrical adapter. Rose avers that "smoke was out of the room prior to our entering it." (*Id*. ¶ 4.) Defendant Rose also avers that Plaintiff and his cell mate voluntarily cleaned the cell. He denies making any comments, such as "Don't be such a baby[.]" (*Id*. ¶¶ 10 &11.)

  c. **Critical Incident Report**

Pursuant to an order on Plaintiff's motion for discovery (Dkt. 37), Defendants filed a copy of a critical incident report that arose out of these circumstances. (Dkt. 39.) The report indicates that at approximately 6:08 in the evening, prisoners reported a fire in a cell. (Critical Incident Report Attach. to Dkt. 39.) The report states that Sergeant Snyder opened the door to the cell and observed a mattress fire. He retrieved a fire extinguisher, and a resident unit officer opened the cell door. Defendant Snyder stepped into the doorway and applied two short bursts at the base of the fire which was at the center and front of the mattress. The cell was not occupied at that time. According to the report, "there was very little smoke in the hallway, and the unit was not evacuated." (*Id*.) A subsequent investigation determined that a melted wire on an electrical adapter caused the fire. A written statement attached to the critical incident report made by Resident Unit Officer Forbush states that "[d]uring chow lines," after an inmate reported a fire, "Sgt. Snyder and myself went to cell 202 and looked through the cell window and saw flames on

the mattress. Sgt. Snyder went for the extinguisher. When he returned, I opened the cell door, and he fired up the extinguisher and put out the flames." (*Id*.) The cell door was closed, and there were no injuries, and the damage was contained to the mattress and linen. In a written statement attached to the critical incident report, Sgt. Snyder stated that he responded to a fire in the cell and that the cell was "smoke filled[.]" (*Id*.) The door was opened, and I could see a mattress . . . burning. I retrieved the fire extinguisher, went back to [the cell] and applied two short bursts to the incipient stage fire. There was very little smoke. The unit was not evacuated." (*Id*.)

### d.     Plaintiff's Medical Records

A copy of MDOC medical records for Plaintiff are attached to the motion.[2] (Defs.' Mot., Dkt. 34, Ex. C.) These records indicate that approximately eight hours before the fire, Plaintiff was seen apparently by a nurse at the facility. (Medical Records Attach to Mot., Dkt. 34, Ex. C at 150.) Plaintiff was complaining of sharp pain in his chest on and off for the past two years and stated that he had been diagnosed with a heart murmur. Plaintiff stated that he smoked for approximately the last seven years. Blood pressure was measured at 146/100, and his temperature was normal. Plaintiff commented that the chest pain went away with rest. Plaintiff was advised to stop smoking and to decrease his intake of salt. Medications were apparently prescribed and given to him.

A medical entry made approximately 24 hours after the fire by a registered nurse indicates that Plaintiff passed out while in the food line in the lobby of a housing unit. When the nurse arrived, Plaintiff was conscious and sitting in a chair. Corrections officers told the nurse that they had moved Plaintiff to the chair and that he had temporarily lost consciousness but that he had not otherwise hit anything. They recounted that Plaintiff was exposed to smoke in his cell and the

---

[2]These medical records are filed under seal.

discharge of a fire extinguisher "briefly last night." (*Id*. at 149.) Plaintiff was carried in the chair to the medical examination room. Blood pressure was measured at 180/118. Plaintiff appeared to be somewhat short of breath, although blood oxygen saturation was found to be normal. Plaintiff complained of continuous tightness on the left side of the chest which the nurse was unable to reproduce with palpation. Plaintiff continued to be somewhat lethargic during the examination, and an ambulance was called. Oxygen was also given to Plaintiff, and he was transported to a hospital for evaluation. (*Id*.)

On October 17, 2002, Plaintiff was seen by medical staff at the facility after his return from the emergency room. (*Id*. at 148.) Plaintiff stated that he had been given a breathing treatment and told the medical staff that he "feels a little better, and is not in as much pain now." (*Id*.) Blood pressure was measured at 183/89, and Plaintiff's breathing was described as "unlabored." Plaintiff was seen again the next day by Dr. Engelsgjerd. The doctor noted the previous emergency room visit "for smoke inhalation . . . smoldering mattress fire in cell (was apparently electrical)[.]" (*Id*.) The doctor stated that Plaintiff had elevated blood pressure, as well as breathing medications. (*Id*.) The doctor stated that Plaintiff was alert, and physical examination found no abnormalities. Plaintiff's lungs were stated to be clear. Dr. Engelsgjerd ordered tests and prescription medications. Plaintiff was instructed to return in one month.

Medical records of Foote Hospital in Jackson, Michigan, indicate that on October 27, 2002, eleven days after the fire, Plaintiff underwent a Myoview cardiac stress test of Plaintiff's heart. (*Id*. at 73.) No pathologic cardiac defects were found. No evidence of myocardial infarction[3] or

---

[3]Infarction is defined as "the process which leads to the formation of an infarct; i.e., the formation of a blood clot in a blood vessel, the resulting obstruction to the circulation, the swelling, the death of tissue, etc." 3 J. E. SCHMIDT, M.D., ATTORNEYS' DICTIONARY OF MEDICINE I 84.

11

ischemia[4] was seen, although a measurement of the wall motion of the heart and ejection fraction were "slightly low." (*Id.*)

Plaintiff's medical records indicate that on January 9, 2003, Dr. Mark L. Zande sent a letter to another doctor relating to Plaintiff. The letter states:

> I saw Hakim Crisp. He was sent originally to me at Foote Hospital for chest pain. He had had a syncopal attack after having been exposed to smoke inhalation from a mattress fire that was started from an electrical etiology. The patient had been somewhat bradycardic. At any rate, the patient had a normal stress test and was diagnosed with H pylori and was appropriately treated. He has had no further episodes of chest discomfort or syncope. He has a history of hypertension, as well as a chronically slow heart rate which is not necessarily abnormal for a young black male. His tilt table test was negative.
>
> Thee is no further cardiac work up that is needed. Please call if I can be of further service.

(*Id.* at 72.)

### 4. Qualified Immunity

Defendants Snyder and Rose assert that they are entitled to qualified immunity. The U.S. Supreme Court has explained that, pursuant to the defense of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). To determine whether an official is entitled to qualified immunity, the Sixth Circuit has instructed that courts are to

> employ the sequential analysis prescribed by the Supreme Court in *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). First (the court) must determine whether, taken in the light most favorable to the party asserting the injury, the facts alleged are sufficient to make out a violation of the Constitution. *Saucier*,

---

[4] Ischemia is defined as "[l]ocal diminution in the blood supply, due to obstruction of inflow of arterial blood . . . ." Blakiston's Gould Medical Dictionary, 703 (4th ed. 1979).

> 533 U.S. at 201, 121 S. Ct. 2151. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." If, however, "a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.*

*Greene*, 310 F.3d at 894. Therefore, this Court's first is to determine whether a constitutional violation can be made out against Defendants Snyder and Rose when viewing the parties' submissions in the light most favorable to Plaintiff.

### 5.  Civil Rights Claim

The gravamen of Plaintiff's complaint is the allegation that Defendants Snyder and Rose violated Plaintiff's Eighth Amendment rights. The Eighth Amendment to the U.S. Constitution protects convicted inmates from the imposition of "cruel and unusual punishments." U.S. CONST. amend. VIII. The Supreme Court held in *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976), that the deliberate indifference to serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain in violation of the Cruel and Unusual Punishments Clause of the Eighth Amendment to the Constitution. The Court explained that "[i]n order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Id.* at 106.

A violation of the Eighth Amendment can occur if it "is manifested by prison doctors and their response to prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." The inquiry is two-pronged, consisting of both an objective and a subjective element. *Wilson v. Seiter*, 501 U.S. 294, 111 S. Ct. 2321, 2323, 115 L. Ed. 2d 271, 279 (1991). The objective inquiry asks whether the deprivation was sufficiently serious. *Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992).

13

The *Caldwell* court found that the plaintiff-prisoner "did not suffer a serious deprivation because his injuries were not serious enough to require immediate medical attention." *Id.* The subjective component asks whether the officials acted with a sufficiently culpable state of mind. *Id.* The plaintiff must show that the defendants' conduct demonstrated a level of deliberateness "'tantamount to an intent to punish.'" *See Hicks v. Frey*, 992 F.2d 1450, 1455 (6th Cir. 1993) (quoting *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir.1988)). In 1994, the Supreme Court further explained this element "by equating it with criminal recklessness, which requires a subjective showing that the defendant was aware of the risk of harm." *Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1995) (citing *Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970, 1979, 128 L. Ed. 2d 811 (1994)). In *Farmer,* the Court specified that for a government official to be deliberately indifferent, he "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

## 6. Conclusions

I find from all the evidence presented that no genuine issue has been created as to whether Defendants Snyder and Rose's actions meet either element of the Eighth Amendment analysis set forth above, and therefore suggest that Defendants' motion for summary judgment be granted. It is undisputed that Plaintiff was not present when the fire was discovered and extinguished. As Plaintiff was not present, he cannot meaningfully dispute that the cell was left to air out while he was eating elsewhere. It is undisputed that Plaintiff was promptly issued a new mattress and linen. I suggest that these actions do not meet the objective prong element of the Eighth Amendment analysis described above. It is disputed whether Plaintiff and his cell mate volunteered or were ordered to clean the cell after they returned and brought in the new mattress and linen. Even if

they had been ordered to perform this task, I suggest that this directive does not constitute objective evidence of the unnecessary and wanton infliction of pain necessary for an Eighth Amendment violation. There is in the exhibits of record no indication that Plaintiff sought medical assistance after this incident. This seriously undercuts the conclusory allegations of the complaint that Plaintiff sought, and these Defendants denied him, medical assistance. The fact that Plaintiff may have been coughing does not, I suggest, amount to deliberate indifference to any serious medical need, as defined in *Whitley v. Albers*, 475 U.S. 312, 319, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986), and *Estelle*, 429 U.S. at 104. Neither of these actions, nor Defendant Rose's statement, "Don't be such a baby," presuming this statement was actually made, meet the subjective element prong of the Eighth Amendment analysis.

Accordingly, since I suggest that no deprivation of a constitutional right occurred, "there is no claim under § 1983, and Defendants have no need for a qualified immunity defense." *Ahlers v. Schebil*, 188 F.3d 365, 374 (6th Cir. 1999). *See also Saucier*, 533 U.S. at 201 ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity"). Therefore, there is no need to proceed to the second step of the qualified immunity analysis. The grant of Defendants' motion is appropriate.

## III. <u>REVIEW</u>

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*,

932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

                                               s/ *Charles E Binder*
                                               CHARLES E. BINDER
Dated: January 6, 2006                    United States Magistrate Judge

**CERTIFICATION**

    I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Diane M. Smith, and served in the traditional manner on Hakim Crisp and Honorable David M. Lawson.

Dated: January 6, 2006                           By     s/Mary E. Dobbick
                                                          Secretary to Magistrate Judge Binder