UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HAKIM CRISP,

                Plaintiff,                Case Number 03-10136

v.                                                      Hon. David M. Lawson
                                                      Magistrate Judge Charles E. Binder

SERGEANT SNYDER and
SERGEANT ROSE,

                Defendants.
_____/

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION,
GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, DISMISSING
FEDERAL CLAIMS WITH PREJUDICE, AND DISMISSING STATE-LAW CLAIMS
WITHOUT PREJUDICE**

On January 6, 2006, Magistrate Judge Charles E. Binder issued a report pursuant to 28 U.S.C. § 636(b) recommending that this Court grant motions to dismiss or for summary judgment filed by the remaining defendants in this case, corrections officers Mark Snyder and Warren Rose. The Court previously dismissed twelve other defendants pursuant to the magistrate judge's recommendation. The plaintiff has objected to the present report, and the defendants have not responded. After considering the motion *de novo*, the Court finds that the defendants are entitled to qualified immunity because the plaintiff has failed to allege a violation of a right under the Eighth Amendment. Although the Court agrees with the plaintiff that this case does not focus on deprivation of medical needs *per se*, but rather on other conditions of confinement, the basic test under the Eighth Amendment is the same, and the plaintiff's evidence comes up short. The Court also believes it should not exercise supplemental jurisdiction over the state-law negligence claims. Therefore, the Court will overrule the objections, adopt the magistrate judge's recommendation, and dismiss the case.

I.

The magistrate judge thoroughly discussed the facts of the case, but it is useful to repeat some of them here. The plaintiff, Hakim Crisp, was a prisoner in the custody of the Michigan Department of Corrections (MDOC), at the St. Louis Correctional Facility. On the evening of October 16, 2002, a fire occurred in the plaintiff's cell while he and his cell-mate, Delano Cotton, were at dinner. The cause of the fire is not in dispute: according to affidavits, the fire was caused by a faulty wire in an electrical adapter the plaintiff had purchased from the prison store. Defendant Snyder was informed of the fire by other inmates, inspected the cell, found the mattress to be in the incipient stage of combustion, retrieved a fire extinguisher, and extinguished the fire with two short blasts. Snyder avers that he aired out the cell for approximately one-half hour before the plaintiff and his cellmate returned. The plaintiff and his cellmate, on the other hand, assert that the defendants never allowed the cell to air out.

After returning to his cell, the plaintiff alleges, Snyder and Rose ordered the plaintiff and his cellmate to remove the fire-damaged mattress and linen from the cell while they were still smoking. The defendants state that the plaintiff and his cellmate were not ordered to clean out the cell, but volunteered to do so. The plaintiff claims that after removing the damaged materials, he and his cellmate returned to the cell and were forced to remain there even though smoke and fumes remained. The plaintiff alleges that a porter arrived fifteen minutes later with disinfectant in hand, which the plaintiff and his cellmate used to finish cleaning the cell. The defendants submit that there was neither smoke nor fumes in the cell at the time, and the cell door was left open while the plaintiff and his cellmate cleaned. A critical incident report filed by Snyder on the same day of the fire confirms his belief that the fire produced "very little smoke." Resp. to Discovery Motion [dkt

# 39], Ex. 1., Critical Incident Report at 1, 5. It is undisputed that the plaintiff was provided with a replacement mattress and clean linens.

The plaintiff alleges that because he was forced to remain in his cell following the fire, he had difficulty breathing and sleeping, felt ill, and was coughing through the night. He claims that, when complaining about the fumes and smoke in the cell, defendant Rose told him, "Don't be such a baby." Compl. at 6. He states that he pressed the "emergency button" several times throughout the night, but help never arrived. Because he was forced to remove the mattress and bedding from the cell, clean the cell, and remain there after the electrical fire, the plaintiff avers he was exposed to toxic fumes. The plaintiff claims the problem was compounded due to the fact that the ventilation system in the cell was faulty and the window could not be opened.

The plaintiff alleges that he awoke the next morning feeling dizzy and light-headed. He fainted on the way to breakfast and was subsequently taken to the hospital. He claims that tests performed at the hospital showed traces of chemical toxins in his blood and symptoms consistent with smoke inhalation. The plaintiff states that he continues to have difficulty breathing, suffers from fainting spells and coughing attacks, and is constantly plagued by infections in his throat and esophagus. He states that MDOC has denied his request for treatment by a respiratory specialist and has also refused to place him with a non-smoking cellmate.

The plaintiff's medical records (filed under seal) indicate that he was seen by a prison nurse just a few hours before the fire broke out. At the time, he complained of sharp pain in his chest that had occurred intermittently for the past two years and stated that he had been diagnosed with a heart murmur. He admitted that he had smoked cigarettes for the last seven years. His blood pressure at

the time was measured at 146/100, and he was advised to quit smoking and decrease his intake of salt.

Another entry confirms that the plaintiff did indeed faint on the morning of October 17, 2002. The entry indicates that the plaintiff was first taken to the prison medical examination room before being evacuated to an outside hospital. His blood pressure was measured at 180/118, and, although he appeared to be short of breath, the oxygen level in his blood was normal. He complained at the time of tightness in the left side of his chest. After his return from the emergency room, the plaintiff was again seen by prison medical staff on October 17, 2002. The plaintiff stated he was given "breathing treatment" at the emergency room and that he was feeling better and in less pain. His breathing was "unlabored" at the time.

The plaintiff's medical records also show that he underwent a cardiac stress test at the Foote Hospital in Jackson, Michigan on October 27, 2002. The test was conducted due to the plaintiff's complaints of chest pain. Based upon the results, Dr. Michael J. Shanks found "no pathological defects." Dr. Mark L. Zande, who also visited with the plaintiff at Foote Hospital, wrote a letter to a prison doctor detailing his impressions and conclusions as follows:

> I saw Hakim Crisp. He was sent originally to me at Foote Hospital for chest pain. He had had a syncopal attack after having been exposed to smoke inhalation from a mattress fire that was started from an electrical etiology. The patient had been somewhat bradycardic. At any rate, the patient had a normal stress test and was diagnosed with H pylori and was appropriately treated. He has had no further episodes of chest discomfort or syncope. He has a history of hypertension, as well as a chronically slow heart rate which is not necessarily abnormal for a young black male. His tilt table test was negative.
>
> There is no further cardiac work up that is needed.

Mot. for Summ. J., Ex. C, Medical Records at 72.

The plaintiff seeks a declaratory judgment that the defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by involuntarily exposing him to smoke and toxins. He also seeks compensatory and punitive damages for his alleged injuries and injunctive relief in the form of an order requiring the MDOC to provide the plaintiff with proper medical treatment.

Magistrate Judge Binder recommends that the Court grant the defendants' motion for summary judgment on qualified immunity grounds since there is no genuine issue of material fact as to whether the defendants violated the plaintiff's Eighth Amendment rights. He acknowledged the two-step test traditionally used when the qualified immunity defense is raised, but he found it unnecessary to proceed to the second step – whether the rights were clearly established – because the plaintiff could not show that any of his rights were violated in the first instance. The magistrate judge treated the plaintiff's claim as one for deliberate indifference to serious medical needs, which is understandable since the plaintiff seeks a mandatory order for medical treatment as part of his relief. He found that the plaintiff could not satisfy the objective prong because the evidence did not support the conclusion that the defendants deprived him of treatment to a sufficiently serious medical need. He also found that the plaintiff could not meet the subjective component because the defendants did not act with a sufficiently culpable state of mind.

The plaintiff objects to the R&R because he believes that the magistrate judge failed to view the evidence in the light most favorable to the plaintiff. According to the plaintiff, when the evidence is considered in this light it compels the conclusion that there is a genuine issue of fact as to whether the conditions of confinement were humane and whether the defendants acted with

deliberate indifference in forcing the plaintiff to clean out his cell and remain therein immediately following the electrical fire.

The plaintiff also objects on the ground that the magistrate judge improperly analyzed his claim as one for deliberate indifference to medical needs when in fact his claim is for "being denied safe and humane conditions of confinement." Pl.'s Objs. at 4.

II.

Objections to a report and recommendation are reviewed *de novo*. "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).

The Sixth Circuit has stated that "[o]verly general objections do not satisfy the objection requirement." *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006). "The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie,* 50 F.3d 373, 380 (6th Cir.1995). "'[O]bjections disput[ing] the correctness of the magistrate's recommendation but fail[ing] to specify the findings . . . believed [to be] in error' are too general." *Spencer*, 449 F.3d at 725 (quoting *Miller*, 50 F.3d at 380).

The plaintiff did not object to the magistrate judge's conclusion that no Eighth Amendment violation resulted from the denial or delay in providing medical treatment to the plaintiff. Therefore, the Court will accept that conclusion and proceed to address the plaintiff's specific objections.

A.

It is true that when considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Likewise, "[i]n evaluating the evidence, [the court must] 'draw all reasonable inferences therefrom in a light most favorable to the non-moving party.'" *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). However, once the moving party has made a showing that no material fact issue exists and points out the deficiencies in the plaintiff's case, the party opposing the motion may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. If the non-moving party, after sufficient opportunity for discovery, is unable to meet his or her burden of proof, summary judgment is clearly proper. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The party who bears the burden of proof must present a jury question as to each element of the claim. *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000). Failure to prove an essential element of a claim renders all other facts immaterial for summary judgment purposes. *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 895 (6th Cir. 1991).

Although the plaintiff makes a general charge that the magistrate judge did not follow the rule giving deference to the plaintiff when facts are in dispute, the plaintiff has not specifically identified any instance where the magistrate judge made this mistake. Likewise, an independent review of the report reveals no such error. The plaintiff's objection is conclusory in the fullest sense of the term and therefore must be overruled. *See Miller*, 50 F.3d at 380 (explaining that general, vague, or conclusory objections do not suffice); *Aldrich v. Bock,* 327 F. Supp. 2d 743, 749 (E.D. Mich. 2004) (observing that to simply disagree with the magistrate judge's conclusion is too conclusory to be characterized as an objection).

B.

The plaintiff also contends that the magistrate judge misconstrued the nature of his claim and therefore applied the wrong test. There is no dispute that the plaintiff's claim arises under the Eighth Amendment. However, he says that the thrust of his claim is not the denial of proper medical care, but rather he contends that he was denied safe and humane conditions of confinement.

Assuming that the plaintiff's claim is as he says, the test for detecting an Eighth Amendment violation does not differ much from the one the magistrate judge applied. A claim of denial of medical treatment is nothing more that a specific form of deprivation of a humane condition of confinement. In either case, the plaintiff must show both an objective and subjective component.

The Supreme Court has held that the Eighth Amendment imposes upon prison officials the duty to "provide humane conditions of confinement," and among the obligations attendant to the discharge of that duty is to "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). This obligation, however, is not unqualified. To the contrary, it is tightly circumscribed by rules requiring certain levels of proof when a prisoner

argues that his conditions of confinement have crossed the boundary established by "contemporary standards of decency" incorporated into Eighth Amendment jurisprudence. *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (observing that "the Eighth Amendment 'must draw its meaning from the evolving standards of decency that mark the progress of a maturing society.'" (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958) (plurality opinion))). Thus, although under the Eighth Amendment prisoners have a limited constitutional right to proper medical care, *Estelle v. Gamble*, 429 U.S. 97, 103 (1976), that right is violated only when corrections officials are deliberately indifferent to the prisoner's serious medical needs. *Id.* at 104.

The Eighth Amendment requires prison officials to "'take reasonable measures to guarantee the safety of inmates.'" *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). To succeed on such a claim, a plaintiff must show: "(1) the deprivation alleged is, objectively, 'sufficiently serious,' and (2) the prison official had a sufficiently culpable state of mind." *Flint v. Kentucky Department of Corrections*, 270 F.3d 340, 352 (6th Cir. 2001) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "A sufficiently culpable state of mind is one of 'deliberate indifference' to inmate health and safety." *Ibid*. In defining deliberate indifference, the Supreme Court held,

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837; *see also Spencer v. Bouchard*, 449 F.3d 721, 727-29 (6th Cir. 2006); *Miller v. Calhoun County*, 408 F.3d 803, 812-13 (6th Cir. 2005); *Thaddeus-X v. Blatter*, 175 F.3d 378, 402 (1999).

Applying this more general test, it is apparent that the plaintiff's federal claim cannot withstand summary judgment. The plaintiff cannot satisfy the objective prong because a reasonable jury could not conclude that the defendants exposed the plaintiff to conditions "posing a substantial risk of serious harm." *See Farmer*, 511 U.S. at 834. To begin with, the plaintiff was exposed to smoke not on a continual basis, but only once. Moreover, as Magistrate Judge Binder noted, the "[p]laintiff was not present when the fire was discovered and extinguished," and therefore, "cannot meaningfully dispute that the cell was left to air out while he was eating elsewhere." R & R at 14. Although the plaintiff has submitted the affidavits of two inmates who aver that the cell was not allowed to air out, it appears that these inmates were also not present when the fire was detected and extinguished. Without a showing of personal knowledge, the testimony of these inmates as to whether the cell was allowed to air out is little more than speculation. For instance, inmate Ritchie Harris averred that as he walked back from dinner, he "observed clouds of smoke and fumes in the room." Resp. to Mot. for Summ. J., Ex. B, Aff. of Harris at ¶ 5. Ten to fifteen minutes later, he observed defendants Snyder and Rose standing in the hallway and then heard them direct the plaintiff and his cellmate to remove the singed mattress and linens. *Id.* at ¶¶ 7-8. This evidence does not rebut the defendants' testimony that during that ten to fifteen minutes (and for an additional fifteen to twenty minutes beforehand), they permitted the smoke to dissipate. In addition, the fact that defendant Snyder entered the room himself to put out the fire and that both defendants were "standing in the hallway in front of the room," Resp. to Mot. for Summ. J., Ex. B, Aff of Harris at ¶ 7, significantly undercuts the plaintiff's characterization of the scene as a cell "engulfed with smoke and [toxic] fumes." It is undisputed that the fire was "small," in the "incipient stage," only "required two small bursts from the extinguisher," and only caused damage to one mattress and

some bedding. Mot. for Summ. J, Ex. A, Aff. of Snyder at ¶ 4. It is also worth noting that the plaintiff's hypothesis that he suffered serious adverse health effects from the incident is quite dubious in light of the evidence showing that he was complaining of chest pain immediately prior to the fire and had smoked cigarettes for seven years. Under these circumstances, a reasonable jury could not conclude that the defendants, in ordering the plaintiff to remove the damaged materials from the cell and later remain there, exposed the plaintiff to conditions "posing a substantial risk of serious harm." *See Farmer*, 511 U.S. at 834.

Even if a reasonable jury could find the objective prong met, however, it certainly could not so find with respect to the subjective prong. Satisfaction of the subjective component mandates proving that the defendants' "state of mind [was] one of 'deliberate indifference' to inmate health or safety." *Ibid.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991)). This requirement "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Ibid.* (quoting *Wilson*, 501 U.S. at 297). The only evidence proffered by the plaintiff to show that the defendants acted in bad faith is his claim that, in response to the plaintiff's objection to removing the mattress and bedding, defendant Rose told him to not "be such a baby." Compl. at 6. However, viewed in context, Rose's statement (which he denies having ever made), simply shows that he thought the plaintiff was exaggerating the difficulty of the task. According to the plaintiff, Rose followed up the comment with the statement: "[D]on't make this into a big deal[.] I really don't have time or patience for this[.] You guys just go in there, clean up the cell, and lock up." *Ibid.* If anything, this demonstrates that Rose genuinely believed he was *not* asking the plaintiff to perform any onerous or dangerous task. The notion that the defendants did not act with a culpable state of mind is bolstered by the uncontested fact that they promptly brought the plaintiff

a new mattress and fresh linens. These are not the actions of correction officers bent on inflicting unnecessary and wanton pain.

Because the plaintiff can make out neither the subjective nor objective components of his Eighth Amendment claim, "there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The magistrate judge properly applied the qualified immunity test in the prescribed order of steps. The Court agrees that the defendants are entitled to summary judgment on the federal claims.

C.

The plaintiff's complaint also contains a negligence count brought under state law. This Court has jurisdiction over those claims since they form part of the same controversy as the Eighth Amendment claim. *See* 28 U.S.C. § 1367(a). However, Section 1367 also provides:

> (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if-
> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). When a plaintiff's federal claims have been dismissed for want of jurisdiction, all other state-law claims must be dismissed. *See Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1996). However, if the federal claims were dismissed on the merits, the question of whether to retain jurisdiction over the state-law claims rests within the Court's discretion. *Blakely v. United States*, 276 F.3d 853, 860 (6th Cir. 2002). Thus, pursuant to this Section 1367(c), the Court has the discretion to decline to exercise supplemental jurisdiction over

state law claims in this case. *Weeks v. Portage County Executive Offices,* 235 F.3d 275, 279 (6th Cir. 2000). The Court believes that it is appropriate to dismiss the state-law negligence claim and leave the plaintiff to his remedies, if any, in state court, particularly when the claim is made against state employees. The case is best handled by the state courts under the applicable state laws dealing with state employee negligence and common-law negligence.

III.

The Court has considered the motion for summary judgment *de novo* following the magistrate judge's report and the plaintiff's objections. The objections lack merit, and the motion will be granted.

Accordingly, it is **ORDERED** that the Magistrate Judge's Report and Recommendation [dkt #47] is **ADOPTED.**

It is further **ORDERED** that the defendants' motion for summary judgment [dkt #34] is **GRANTED**.

It is further **ORDERED** that the plaintiff's federal claims against these defendants are **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that the plaintiff's state-law claims are **DISMISSED WITHOUT PREJUDICE**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: July 27, 2007

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 27, 2007

s/Felicia M. Moses
FELICIA M. MOSES